### WICKHAM, Assignee, etc., v. MOREHOUSE and others.

*(Circuit Court, W. D. Pennsylvania.   April 13, 1883.)*

1. SALE OF REAL ESTATE BY MARSHAL—EQUITABLE JURISDICTION—CLAIMANTS
   OF PROCEEDS—DISTRIBUTION.
   Where, upon a marshal's sale of real estate, he takes for the bid the receipt
   of the purchaser as the first lien creditor, and exceptions are filed to his special
   return, a bill on the equity side of the court at the suit of the exceptant will
   lie to determine the rights of the rival claimants of the proceeds of sale ; and
   this is the proper practice to obtain a review of the decision on the question of
   distribution, if the amount in controversy brings the case within the appellate
   jurisdiction of the supreme court.

2. DELIVERY OF DEED AND SECURITY—PRESUMPTION.
   The presumption is that a deed for land and the vendor's purchase-money
   security, of the same date, were delivered simultaneously.

3. PRINCIPAL AND AGENT—AGENT PLEDGING PRINCIPAL'S CREDIT—DUTY TO
   MAKE INQUIRY AS TO AUTHORITY.
   No agent, however general his powers, has implied authority to pledge the
   credit of his principal for his own private debt, and if he undertake to do so, it
   is the clear duty of the party dealing with him to make inquiry as to his au-
   thority.

4. JUDGMENT SECURITY—ALLEGED FRAUD—PROOF.
   To justify a court of equity in striking down a defendant's judgment secu-
   rity for alleged fraud, which the answer denies, the evidence of the fraud should
   be clear and convincing, and unless so established by the preponderance of
   proofs, relief will be denied.

In Equity.

*Roger Sherman,* for complainant.

*Wm. H. Armstrong* and *J. L. Meredith,* for defendant.

ACHESON, J.   The complainant is the assignee and owner of a
judgment for $2,500, in favor of Hiram C. Johns against Orlando
L. Ballou, entered in the court of common pleas of Tioga county,
Pennsylvania, September 13, 1876, and which then became a lien upon
lands in that county conveyed to Ballou by Mrs. A. M. More-
house, one of the defendants.   On August 28, 1876, Mrs. Morehouse
obtained judgment by confession against Ballou in this court for
$16,653, and subsequently caused execution to be issued thereon, and
a levy made upon said lands, which the marshal, by virtue of said ex-

ccution, sold on April 9, 1879, to Mrs. Morehouse for $4,800. Pursuant to the Pennsylvania statute regulating judicial sales to lien creditors, which has been adopted by this court as a rule of practice, the marshal took the receipt of Mrs. Morehouse as the first lien creditor for the amount of her bid, less the costs of sale. To his return showing this appropriation the complainant excepted, and thereupon filed his bill on the equity side of the court. The bill alleges that the complainant's lien is prior in time to that of Mrs. Morehouse; but, if not, that her judgment as against the complainant is fraudulent and void; and the bill prays that the complainant be decreed the first lien creditor of Ballou, and that the claim of Mrs. Morehouse to the proceeds of the marshal's sale be postponed to his claim; that the fund be paid into court for distribution, and so much thereof as necessary be applied to the satisfaction of the complainant's judgment.

At the threshold of the case we encounter an objection to the jurisdiction of the court to entertain the bill, the defendants contending that the proper and only remedy of the complainant is on the law side of the court, agreeably to the state practice, upon his exceptions to the special return of the marshal. I am, however, of the opinion that the bill is maintainable. *Bayard* v. *Lombard,* 9 How. 530. Without doubt the controversy is of equitable cognizance. Id. The order of court adopting the act of assembly as a rule of practice, was not intended to interfere with the right of the parties in interest to seek equitable relief. Where the amount in controversy brings the case within the appellate jurisdiction of the supreme court, it may be of the last importance to the parties to have their rights determined upon a bill in equity, to the end that the decision of the court may be reviewed, which could not be done if the case were disposed of merely upon the exceptions to the marshal's appropriation. Id.

The bill charges that the judgment of Mrs. Morehouse was entered before the delivery of the deeds for said land to Ballou, and before any title vested in him, and therefore that she acquired no lien by virtue of her judgment; and further, that Ballou was falsely stated to be a citizen of the state of Ohio, when he was not such, to the end that the judgment might be entered in this court. The bill also charges that the conveyance of said lands by Mrs. Morehouse to Ballou was made under a corrupt and collusive agreement, for the purpose of giving Ballou a fictitious credit, and enabling him to defraud creditors whom it was intended he should create by placing the apparent unincumbered title to said lands in him, so that he might incur debts

by reason of such apparent ownership; that the judgment was taken for a fictitious sum and not the real consideration of $16,-653; that it was entered in the United States circuit court at Erie, Pennsylvania, by Hiram C. Johns, the attorney and agent of Mrs. Morehouse, for the purpose of secretly creating a lien upon said property, in such manner that the same could not be ascertained by reference to the records of Tioga county, thereby enabling Ballou to procure credit upon his apparent unincumbered ownership of said lands; that subsequently Johns, as agent of Mrs. Morehouse, borrowed and received from the Exchange Bank of Titusville, of which the complainant is assignee, $2,000, (less discount,) upon a note for that sum signed by himself and Mrs. Morehouse, by said Johns, as her agent; Johns giving the bank as security an assignment of the aforesaid judgment for $2,500 (*Johns* v. *Ballou*) in the court of common pleas of Tioga county, representing the same to be the first lien upon said lands, and exhibiting a certificate from the records of Tioga county showing it to be so, upon the faith of which representation and certificate the bank gave Johns the money and took the assignment of said judgment; that said debt was not paid when due; that Johns is insolvent and the bank has been unable to collect the debt.

Undoubtedly, if these allegations are true, the complainant is entitled to the relief sought. But all the material averments of the bill, in so far, at least, as they affect Mrs. Morehouse, are denied by her answer. It remains, then, to inquire whether the bill is sustained by the evidence.

The deeds from Mrs. Morehouse to Ballou bear date July 8, 1876, and were recorded August 30, 1876. The judgment bond of Ballou to Mrs. Morehouse, upon which her judgment was obtained on August 28, 1876, also bears date July 8, 1876. It was given for the purchase money of said lands, and this is recited in the bond itself. Upon the execution of the deeds they were given to Johns to be delivered to Ballou, but there is no direct evidence as to the date of their delivery to the latter, or of the date of the delivery of the bond. In the absence of express evidence of a previous delivery to Ballou, the complainant contends that the date of the recording of the deeds must be taken as the date of the delivery thereof, and as that was two days after the entry of the judgment, the lands, it is claimed, were not bound thereby, Ballou then having no title to which the lien of the judgment could attach. But clearly the presumption is that the deeds and purchase-money security were delivered simultaneously.

It cannot be inferred from the mere fact that the deeds were not recorded until two days after the entry of the judgment that the purchase-money security was delivered before the deeds, for that would be altogether against the ordinary course of business. In *McDowell* v. *Cooper*, 14 Serg. & R. 299, the court say: "The man who executes a mortgage to the vendor for the payment of the purchase money must be presumed to have accepted the conveyance." According to *Hall* v. *Benner*, 1 Pen. & W. 407, the delivery of a deed "is always presumed to be the time of its date, unless the contrary do appear." Upon the whole case, the only admissible conclusion is that the lien of Mrs. Morehouse's judgment is prior in time to the lien of the complainant's judgment.

As to the citizenship of Orlando L. Ballou, little appears outside of the record of the confessed judgment. In the bond he is described as of Montgomery township, Wood county, Ohio, and he is declared against as a citizen of the state of Ohio, and throughout the whole record is so styled. Now, the rule is that where jurisdiction is properly averred in the pleadings, it must be taken *prima facie* as existing, and he who asserts the contrary for causes *dehors* the pleadings must prove his assertion. *Sheppard* v. *Graves*, 14 How. 510. I think the complainant has failed to make good his allegation that Ballou was falsely stated to be a citizen of Ohio. It is, indeed, shown that he and his wife "boarded" with the occupant of one of the Morehouse tracts of land in the fall of 1876 and the succeeding winter, but this was after his purchase, and is not at all inconsistent with his being a citizen of Ohio at the time he purchased from Mrs. Morehouse, and when her judgment was obtained.

Hiram C. Johns was the son-in-law of Mrs. Morehouse. He was an attorney at law, and in that capacity acted for her for some time. It would seem, also, that in several matters he had been her authorized agent. But giving the evidence the utmost effect that can be fairly claimed for it, it scarcely shows that he was her general agent, and certainly it does not establish that he was her universal agent. She testifies that in the transaction with the Exchange Bank of Titusville he acted altogether without her authority and without her knowledge. His declarations to the president of the bank as to his authority are not evidence against Mrs. Morehouse. *Grim* v. *Bonnell*, 78 Pa. St. 152. He was not examined by either side, so that we are without his testimony; and, indeed, from the character of the man, as this record discloses it, his unsupported oath would carry little weight, if we had it. I find in the case no evidence which would

warrant the conclusion that Johns had any authority to bind Mrs. Morehouse, or act for her in his dealings with the bank.

Whatever else in this case may be obscure, it is plain that Hiram C. Johns perpetrated a base fraud on the bank. The evidence also justifies the conclusion that he and Ballou were associated in the covinous scheme set forth in the complainant's bill. The disputable question is whether Mrs. Morehouse was a party thereto, or, knowing the fraudulent intentions of Johns and Ballou, acquiesced therein? She asseverates her entire innocence by her answer, and again in her testimony. It would seem that she never had any direct dealings with Ballou; the negotiations on his side for the purchase of the lands were conducted by Johns, who was then practicing law at Titusville, in Crawford county, Pennsylvania. Mrs. Morehouse resided at Williamsport, in Lycoming county, whither Johns went to negotiate the purchase from her. Theresa Johns, the wife of Hiram, and daughter of Mrs. Morehouse, was present when negotiations between them took place. She testifies, in substance, that Johns told her mother that Ballou, who had been over the property, and was much pleased with it, and anxious to get it, had authorized him to purchase it for him at the price named,—$15,000 and upward,—$5,000 in hand and the balance secured by a judgment; that her mother objected to signing the deeds until she received the $5,000, but Johns said he would remit it as soon as he returned to Titusville; that he said he would enter the judgment in the United States court, because Ballou had property in Bradner, Ohio, and in Pennsylvania, and by entering the judgment in the United States court it would hold all the property Ballou might own in the United States; that shortly afterward Johns came again to Williamsport and her mother then wanted to know why she had not received the $5,000, and Johns told her not to be alarmed—that the money would be paid as soon as Ballou sold his oil he had in tank at Titusville; that her mother insisted then and previously that the deeds should not be recorded until the $5,000 were paid, and Johns said they should not be. Mrs. Morehouse's account of the negotiations between herself and Johns, and what he told her, is substantially the same as her daughter's.

The witnesses, as is not unusual in the matter of values, differ as to what the lands were then worth. Mr. Allen, a witness for the complainant, fixes the value at from $10,000 to $11,000. On the other side, S. S. Johns and Mr. Vanness say they were worth, including all improvements, about $15,000. The evidence indicates that the price, $15.860, which Ballou agreed to pay, was rather high,

but not so excessive as to suggest bad faith or evil purpose on the part of Mrs Morehouse. The testimony most seriously affecting her is that of Henry Allen, Esq., an attorney at law, of Tioga county. She was at his office some day in the latter part of February, 1879, and held a conversation with him. He states she said, (I quote from his testimony :)

"Hiram told me that Ballou had no property, and it was intended to make it appear that Ballou was a man of means. She said, Hiram said that the object in doing this was to enable Ballou to get a credit. She says, Hiram says that if he can show deeds for all this property, or a title to it, it would enable Ballou to borrow money, there being nothing against it—there being no incumbrances against the property. She said that Hiram told her it was a common thing with business men to do that; that he had known a good many men without credit get a credit in that way. She stated to me that she had consented to making the deed because Hiram said it was all right. She said that she thought it was a strange way, but Hiram told her it was all right. She said that she had heard that they were taking out the saws and dismantling the mill; that they were cutting timber, and if she ever got the property back it would be deteriorated in value very much. I remarked, 'If you had a lien you could very soon stop the committing of waste.' She said, 'Could I do that from the United States court?' I said, 'I think so. Have you a judgment in the United States court for this purchase money?' She said she supposed she had. I asked her, 'How large?' She said for $16,000. I said, 'Why did you not have it entered here where the property was?' She said that Hiram said that would spoil it all; that if the judgment was entered in this county, it would show an incumbrance upon the property, and that would defeat their object."

Upon cross-examination Mr. Allen says:

"The following were the exact words of the conversation by her—she used this expression: 'It was to give Ballou credit so that he could borrow money or buy property.' I don't know if she said 'Ballou' or 'him.' 'Hiram said that such things were often done among business men.' 'I thought it was a strange way.' 'He said it was all right.' There may be more that I could tell in her exact language, but I do not remember now. The balance of my testimony in chief is the substance of what she said."

Mr. Allen had never seen Mrs. Morehouse until that day. She did not visit him for professional advice. Her sole object was to direct him not to bring a suit against Mrs. Sylvia Rockwell, which Johns, without authority, as she alleged, had instructed Mr. Allen to institute, or to discontinue the suit if brought. She had already employed counsel at Williamsport, and her execution was then in the marshal's hands. She positively denies that she made the statements to which Mr. Allen testifies, and also denies that Johns ever made such statements to her. Her testimony in denial is very em-

phatic. She was accompanied to Mr. Allen's office by Mrs. Rockwell and her son Burt J. Rockwell, both of whom testify that they went with her, remained with her, and left the office in her company; that all the conversation between her and Mr. Allen was in their presence and hearing, and that no such conversation as he details took place.

Mr. Allen testified first on December 3, 1880. On the day previous he went to Mrs. Rockwell's house, some eight miles distant from his home, and inquired if she recollected any of the conversation which took place between him and Mrs. Morehouse. As to what passed between Mr. Allen and Mrs. Rockwell at this interview, they differ in material points.

When first on the witness stand Mr. Allen had forgotten that any other person was present on the occassion of Mrs. Morehouse's visit besides those already named. But he afterwards recollected that S. E. Wilcox was also there. He saw him and called his attention to the circumstances, and in rebuttal his testimony was taken. Mr. Wilcox states that in the latter part of the winter of 1879 he went into the office of Mr. Allen and there saw two women (one of whom he was told by Mr. Allen, later on the same day, was Mrs. Morehouse) and a young man; that soon after he entered, the other woman, who he thinks was Mrs. Rockwell, and the young man went out, leaving Mrs. Morehouse there; that she and Mr. Allen then conversed for some time, and he heard them speak of property she had sold Ballou, of Johns, etc., but he cannot remember particularly what was said. Mr. Allen also testifies that most of his conversation with Mrs. Morehouse was after the two Rockwells had left the office. On the other hand, Mrs. Morehouse, Mrs. Rockwell, and the young man, upon re-examination, reiterate that the Rockwells did not leave the office, but remained with Mrs. Morehouse during the whole time she was there, and left with her, and they all declare that no one was present besides Mr. Allen and themselves.

Amid these strange contradictions, it is difficult to discover the exact truth of this matter. Whether the repugnancy in the testimony is due to flat perjury on the one side or the other, or is explicable upon the more charitable hypothesis of honest misapprehension, I will not undertake to determine. Active participation by Mrs. Morehouse in the fraudulent scheme of Johns and Ballou would imply great turpitude on her part, and she would be scarcely less guilty if, with full knowledge of their intended frauds, she simply acquiesced therein. Presumably she is innocent. The burden of proof is upon the complain-

ant. The answer is responsive to the bill and must be overthrown by a preponderance of evidence. To justify the court in striking down her judgment the evidence of her culpability should be clear and convincing. After the most serious reflection, my conclusion is that upon the whole proofs the charges of the bill are not sustained sufficiently.

But the complainant contends that, even if Mrs. Morehouse is herself innocent, she is to be affected by the fraud of her agent and attorney, Hiram C. Johns. But, as we have already seen, in the transaction with the Exchange Bank of Titusville, Johns acted entirely without authority from Mrs. Morehouse. Moreover, as I apprehend the evidence, he did not profess to be making a loan for her, but for himself, and he essayed to secure it by her name signed to the note by himself as "her agent and attorney." But no agent, however general his powers, has implied authority to pledge the credit of his principal for his own private debt, and if he undertakes so to do it is the clear duty of the party dealing with him to make inquiry as to his authority. Still further: The bank had constructive notice of Mrs. Morehouse's judgment. It was duly entered in the United States circuit court, and was as much a lien upon the Ballou lands as if entered in the court of common pleas of Tioga county. By a proper search the bank would have learned of the prior incumbrance and escaped loss.

Let a decree be drawn dismissing the bill, with costs.