OLIVER TWIST, PLAINTIFF, v. GEORGE A. WOERST, DEFENDANT.

Argued October 7. 1924—Decided February 9, 1925.

In the case of a Circuit Court judgment docketed in the Supreme Court, the twenty years' limitation provided by statute (*Comp. Stat., p.* 3166, § 7) commences to run from the date of the judgment in the Circuit Court, and not from the date of docketing the transcript of the judgment in the Supreme Court.

On *scire facias*—motion to set aside judgment by default.

Before Justices TRENCHARD, MINTURN and LLOYD.

For the motion, *Charles K. Landis, Jr.*

*Contra, Linton Satterthwaite.*

The opinion of the court was delivered by

TRENCHARD, J.    A judgment obtained by Oliver Twist against George A. Woertz was entered in the Mercer County Circuit Court May 9th, 1903, and docketed in the New Jersey Supreme Court May 20th, 1903.

To revive this judgment, a writ of *scire facias,* tested May 10th, 1923, was delivered to the sheriff May 11th, 1923.

Judgment on *scire facias* was entered by default in the New Jersey Supreme Court June 20th, 1923.

The defendant, George A. Woertz, died July 1st, 1923.    By his last will and testament, probated in Cape May county, New Jersey, all his estate was bequeathed and devised to his wife, Julia A. Woertz.    She and Louis F. Woertz were named as executrix and executor, and are now acting as such by letters testamentary, duly issued.

Execution was not issued on the default judgment of June 20th, 1923, before the death of George A. Woertz.

On June 3d, 1924, this rule to show cause was made, on motion of such executrix and executor, that the plaintiff in the default judgment of June 20th, 1923, show cause why that default judgment should not be set aside.

It is now maintained, and we think rightly, that the judgment must be set aside because the writ of *scire facias* was not issued within twenty years after the date of the judgment of May 9th, 1903, in the Circuit Court.

In opposition to this view, the plaintiff raises no question of pleading or practice, but his sole contention is that the *scire facias* was issued within the time allowed by the statute.

Our act for the limitation of actions (3 *Comp. Stat., p.* 3166, § 7) declares: "That judgments in any court of record

of this state may be revived by *scire facias,* or an action of debt may be brought thereon within twenty years next after the date of such judgment, and not after; provided, that the time during which the person who is or shall be entitled to the benefit of such judgment shall have been under the age of twenty-one years, or insane, shall not be taken or computed as part of the said limited period of twenty years."

Here, there is no question as to the status of the plaintiff, but his contention is that the statute begins to run, not from the date of such judgment in the Circuit Court, but from the date of docketing in the Supreme Court.

We do not take that view.

In the case of a Circuit Court judgment docketed in the Supreme Court, we think that the twenty years' limitation provided by statute (*Comp. Stat., p.* 3166, § 7) commences to run from the date of the judgment in the Circuit Court, and not from the date of docketing the transcript of the judgment in the Supreme Court.

We know of no decision in New Jersey directly in point.

In the early case of *Young* v. *Remer* (*N. Y.*), 4 *Barb.* 442, the language of the New York statute, then being very similar to the present New Jersey statute, was construed as extending the lien of the docketed judgment as to real estate but not as to the time of its duration. (Subsequent changes in the New York statute and their effect are summarized in *Raphael* v. *Mencke,* 28 *N. Y. App. Div.* 91.) A like view was taken by the Supreme Court of Indiana under a somewhat similar statute. *Bradfield* v. *Newby,* 130 *Ind.* 59.

The language of our statute of limitations, when the question of time was the predominant idea in the mind of the legislature, forbids a revival by *scire facias* more than twenty years after the *date of the judgment.* 3 *Comp. Stat., p.* 3166, § 7. The Practice act (3 *Comp. Stat., p.* 4105, § 168) requires the clerk of the court where a judgment is rendered to enter "III. The date of the actual entry of such judgment." The act concerning judgments (3 *Comp. Stat., p.* 2957, § 6), provides "that any final judgment of a Circuit Court * * * may be docketed in the Supreme Court by

the party recovering the same or by his executor or administrator." Section 8 requires the transcript of a judgment, when docketed, to contain, "third, the time of signing such judgment and docketing the same." Section 11 declares "that such judgment shall, from the time of such docketing in the Supreme Court, operate as a judgment obtained in the Supreme Court, and satisfaction thereof may be entered in the margin of the docket, upon the same evidence and in like manner, as is now provided by law in case of judgments rendered in the Supreme Court." Section 13 provides "that every judgment docketed as herein directed may be revived by *scire facias* in the Supreme Court, in the same manner, in the like cases, and with like effect as if such judgment had been obtained in that court." Section 15 of the same act provides "that a judgment docketed as herein provided may be removed to the Supreme Court by writ of error in the same manner as if such judgment had not been so docketed."

Now, we think that the Judgment act, in view of the statute of limitations running from "the date of such judgment," must be construed as intending that a judgment docketed in the Supreme Court should have a state-wide operation in like manner and with like effect as if originally entered in the Supreme Court instead of only a county-wide operation in like manner and with like effect of other judgments in the county court where the docketed judgment was, in fact, originally entered; preserving the identity of the judgment as a judgment of the county court, from which an appeal may be had to the Supreme Court, where it has been docketed, the time when such appeal may be taken or the judgment revived, running from "the date of such judgment," which is the date when actually entered in the county court, as required by the Practice act and Judgment act to be stated in the county record of the judgment, and to so appear when docketed in the Supreme Court. Docketing in the Supreme Court adds nothing to the period of existence of the Circuit Court judgment.

This view is fortified, when we consider that a proceeding by *scire facias* to revive a judgment is not an original pro-

ceeding, but a mere continuance of the former suit, or, in other words, it is merely a supplementary remedy to aid in the recovery of the debt evidenced by the original judgment. *Tindall* v. *Carson,* 16 *N. J. L.* 94; *Woolston* v. *Gale,* 9 *Id.* 32. It is further strengthened, when we consider the purpose for which judgments are docketed in the Supreme Court, which is to give a broader scope to their operation. In the somewhat analogous case of *Messerer.* v. *Vannerman,* 63 *Id.* 535, the Supreme Court says: "The main design of the legislatuie in enabling parties to docket in the Common Pleas judgments rendered in the justice and District Courts, has always been supposed to be that the debtor's real estate might be sold for his debts. That is the only design which cannot be as well effectuated by execution out of the lower courts as by execution out of the Common Pleas."

Since the judgment by default on *scire facias* was founded upon a judgment whose life had expired by virtue of the statute of limitations, the rule.to show cause must be made absolute and the judgment in question set aside, with costs.