**TREND MILLS, Division of Champion International Corp., Plaintiff,**

v.

**Arnold SOCHER, Defendant.**

**Civ. No. 74–1210.**

United States District Court, D. New Jersey.

May 21, 1980.

Wilentz, Goldman & Spitzer by Harold G. Cohen and Alain Chirot, Woodbridge, for defendant.

No appearance for plaintiff.

## OPINION

BIUNNO, District Judge.

Trend Mills sued Socher by complaint filed in this court on August 8, 1974. The claim was for merchandise sold and delivered to Soc-Per Holding Corporation, Inc., d/b/a Carpet Warehouse, payment for which had been guaranteed by Socher.

After summons was served and no answer filed, a request for default was filed

October 7, 1974, and on proof by affidavit judgment by default was entered October 9, 1974 in the amount of $38,312.90 for liquidated damages and interest, plus costs taxed at $50.

A writ of execution was issued November 7, 1974 and recorded in Book Q of Executions, page 86. On February 20, 1975 the writ was returned by the U.S. Marshal unexecuted.

On March 19, 1980, nothing further having occurred in this case, Socher filed a motion grounded on N.J.S.A. 2A:16–49.1 (1967) seeking an order that the judgment be cancelled and discharged of record based upon entry of a discharge in bankruptcy on October 26, 1976 by the U.S. District Court for the Southern District of Florida in proceedings begun by Socher by voluntary petition in bankruptcy. Accompanying the motion is a certification under penalty of perjury signed by Socher on December 1, 1979.

The certification recites the entry of judgment here, the bankruptcy and discharge in Florida, states that plaintiff was "identified as a creditor" in the bankruptcy, attaches a copy of the "Discharge of Bankrupt", certified by the clerk of that court, and asks that the judgment here be cancelled and discharged of record.

At the return of the motion on April 14, 1980, the court raised the question whether the New Jersey legislature could enact a statute applicable to a federal judgment entered by a federal court, and requested that the point be briefed. After a brief was submitted, the matter was heard on the adjourned date.

Socher's argument is that the New Jersey statute may be applied through F.R.Civ.P. 60(b), which authorizes the court on motion made in a reasonable time and on terms, to relieve a party from a final judgment for the reason, among others, that:

"(5) the judgment has been satisfied, released or discharged . . . or it is no longer equitable that the judgment should have prospective application . ."

The rule states that it does not limit the court's power to entertain an independent action to relieve a party from a judgment, among other forms of relief. The former writs of coram nobis, coram vobis, audita querela, and bills of review as well as bills in the nature of bills of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion under the Rules or by independent action.

It does not appear to the court that the relief sought can be granted, whether under Rule 60(b) or under N.J.S.A. 2A:16–49.1 (1967). The reason for this is that at the most, the discharge in bankruptcy operates only on the personal liability of the bankrupt and not on the judgment itself or on any lien arising by virtue of the judgment. The phrasing of the order for discharge states that:

"2. Any judgment heretofore * * * obtained in any court * * * is null and void as a determination of *the personal liability of the bankrupt*"

with respect to four categories of debts. (emphasis added).

Similarly, par. 3 of that order states that all creditors "whose judgments are declared null and void by paragraph 2 above are enjoined from * * * employing any process to collect such debts *as personal liabilities* of the above-named bankrupt." (emphasis added). See, 11 U.S.C. § 524 (1978) and the former Bankruptcy Act.

While scholars may disagree on the question whether the rule originated under § 34 of the Judiciary Act of 1789 (1 Stat. 92), or under the Process Acts, of which the first was also enacted in 1789 (1 Stat. 93), the fact is that judgments of federal courts are a lien on property of the judgment debtor within the state where the federal court sits, with like effect as though the judgment had been entered by a court of that state. For early cases, see *Lombard v. Bayard*, F.Cas. No. 8469 (Cir.Ct.Pa., 1848), aff'd., *Bayard v. Lombard*, 50 U.S. 530, 9 How. 530, 13 L.Ed. 245 (1850), and *Ward v. Chamberlin*, 67 U.S. 430, 2 Black. 430, 17 L.Ed. 319 (1862).

In any event, it is clear that since 1840, there has been an explicit federal statute on the point, the present expression being found in 28 U.S.C. § 1962.

■ The effect of that section is that judgments rendered by the court in this District, which is co-extensive with the State of New Jersey, are liens on property located in New Jersey in the same manner, to the same extent and under the same conditions as are judgments of the Superior Court of New Jersey, a court of original general jurisdiction throughout the state in all causes. *N.J.Const., 1947*, Art. 6, § 3, par. 2.

The rest of § 1962 has no application here because judgments of the Superior Court become liens without the need for any registration, recording, docketing, indexing or any other such step. By virtue of N.J.S.A. 2A:16–1, Superior Court judgments become liens from the time of the actual entry of the judgment on the minutes or records of the court.

See *In re Fornabai*, 227 F.Supp. 928 (D.N.J., 1964), where the late Judge Shaw ruled that a judgment entered in Superior Court on December 8, 1960, and another one entered in this court on March 10, 1961, were entitled to priority by reason of their lien over claims of the United States for taxes, where the earliest notice of tax lien was filed April 10, 1961. Judge Shaw relied on N.J.S.A. 2A:16–1 for the Superior Court judgment, on that statute and 28 U.S.C. § 1962 for the federal judgment, and on 26 U.S.C. § 6323 (1954 Code) for the rule that the lien for taxes is not valid against a judgment creditor until notice of the lien has been filed.

■ At least in this Circuit, the view is that § 1962, while it borrows the state law on the lien of judgments, does not borrow state law on methods of satisfaction for federal judgments. See *Williams v. Ocean Transport Lines, Inc.*, 425 F.2d 1183, at 1190–1191 (CA 3, 1970), where it is also observed that: "No provision in Title 28 of the United States Code deals with the manner of satisfaction of federal court judgments."

28 U.S.C. § 751 provides for the clerks of the district courts, and 28 U.S.C. § 956 authorizes clerks to exercise the powers and perform the duties assigned to them by the court. General Rule 24 of this District deals with entry of satisfaction of money judgments on warrant of satisfaction, and does not apply here since nothing suggests that the judgment has been paid and satisfied.

■ There is a distinct difference between the personal liability of a judgment debtor to pay the judgment, and the lien of that judgment on realty to which it attaches. Aside from bankruptcy, the property law of New Jersey attaches a judgment lien to every interest in realty owned by the judgment debtor when the judgment is entered, or which the judgment debtor may acquire thereafter. The lien survives for 20 years under the common law rule (after which a presumption of payment arises), see *Gulick v. Loder*, 13 N.J.L. 68 (Sup.1832); *Elsasser v. Haines*, 52 N.J.L. 10, 18 A. 1095 (Sup.1889); *Twist v. Woerst*, 101 N.J.L. 7, 127 A. 578 (Sup.1924). Within the 20 years, the judgment may be revived, N.J.S.A. 2A:14–5.

■ With bankruptcy, the general pattern calls for all assets of the bankrupt to become part of the bankruptcy estate, but only to the extent of his interest. If his interest be subject to a lien, whether by judgment, mortgage or otherwise, the estate receives it subject to that lien. The bankruptcy courts have long had authority to order a sale of such property, either subject to all liens, or free of liens (in which case the liens are transferred to the proceeds). When sold subject to liens, the lien survives even though the personal liability of the bankrupt be discharged.

This was the situation in *Furnival Machinery Co. v. King*, 142 N.J.Super. 251, 361 A.2d 91 (App.1976), the only reported decision found involving N.J.S.A. 2A:16–49.1 (1967). The opinion by Presiding Judge Kolovsky reversed a trial court order granting cancellation and discharge of a judg-

ment entered before bankruptcy even though the bankrupt had been relieved of personal liability to pay it. It appeared that the land subject to the lien was sold by the bankruptcy trustee to the bankrupt's wife pursuant to order authorizing sale "subject to all outstanding liens and encumbrances," and a third party purchased some of that land from the wife thereafter.

In a letter memorandum submitted after hearing, Socher suggests that the requested order be drawn to make clear that it is not to apply to the lien of the judgment on realty owned by Socher before discharge, and that it should operate to prevent the judgment from being a lien on realty acquired by Socher after his discharge.

This suggestion calls for an adjudication of an advisory nature since the court has before it no facts in respect to the history of the title of any particular realty and without that title history the court lacks confidence that such a form of order would be sound or correct because there are too many variables and unknowns.

■ Interests in realty in New Jersey which may become subject to judgment liens may be acquired in a variety of ways for which there is no centralized record office where ownership of such an interest can be determined as of any given date. The commonest method, of course, is by deed, but even these are distributed among 21 county record offices (either a Register of Deeds and Mortgages or a County Clerk, depending on the county). Another common method is by devise under a will or descent as heir at law on the death of an intestate. Again, there are 21 counties with offices that handle the administration of estates, whether by will or intestacy, where the only index available is by the name of the decedent and not by the names of beneficiaries. Title may also be obtained by adverse possession, a method for which no record office may be looked to.

It is for this reason that the ownership of interests in realty (which might even be a mortgage) can only be ascertained by a retrospective search of the title of specific parcels of realty. Such searches involve what is called the "adverse work", performed after the retrospective chain of title has been established, to check out each owner in the chain for judgments entered up to 20 years before acquisition of the interest, as well as for mortgages and other liens, deeds, and the like.

The judgment search includes a search for federal judgments, among which bankruptcies in this District are included. In that case the bankruptcy proceedings must be examined by the searcher, just as he must examine foreclosures and other judicial proceedings that may affect the title.

Without in any way suggesting that it is the case here, it is not unknown for debtors to conceal or dispose of assets to keep them from the reach of creditors. Many devices have doubtless been used. A conveyance may be made to a friendly grantee before bankruptcy, with a reconveyance some time after the bankruptcy has concluded, without listing the property as an asset. If the realty and the bankruptcy were both in New Jersey, this strategem would have some chance of being turned up on the search; but if the realty is in New Jersey and the bankruptcy were in another district, the bankruptcy would not be picked up at all.

Or, the interest may have been acquired by devise or descent, not listed as an asset, and disposed of after bankruptcy. Again, if the bankruptcy were in another District, the search would not bring the situation to light. Other methods exist, but it is preferable not to describe them. The two examples suffice.

These illustrations alone show why no general approach can be taken. The continued existence of the lien of a judgment can only be evaluated soundly in light of a complete search of the title of specific realty. See, also, N.J.S.A. 46:16–4.1 for a statute providing for recording bankruptcy proceedings in the record office of the county where affected realty is located.[1]

1. Whether the judgment here is a lien on particular realty is a matter routinely ascertained on a title search. If, in fact, Socher owned no interest in New Jersey realty from the time the

There are other problems with the motion. The certification under penalty of perjury (in lieu of affidavit), authorized by 28 U.S.C. § 1746, carries no *scilicet* : it does not indicate where it was made, and so lacks the jurisdictional data needed for a prosecution if it be false, see *U.S.Const.*, Art. III, § 2, cl. 3; and *Amend.* VI.

The certification says only that the plaintiff here was "identified as a creditor in the bankruptcy proceedings". It does not say whether it was listed as a judgment creditor, whether it was given and received notice, whether any claim was filed, whether the claim was given the priority afforded to a judgment creditor, whether any distribution to the judgment creditor was made, and so on. These matters should be established from the records of the bankruptcy court as the best evidence.

Most important of all, it does not assert that the judgment debtor owned no interest in any realty in New Jersey at the time judgment was entered, that he made no earlier conveyance or transfer other than for full consideration, that he acquired none thereafter, or, if he owned any such interest at the time of filing the petition for bankruptcy, it was listed or otherwise disclosed as an asset in the bankruptcy, and in such case disclosing what disposition was made and by what authority.

Finally, while Socher argues that the judgment creditor has not appeared, either on the original date or on the adjourned date, the clerk's file contains no proof of service of the motion, and neither the cover letter for the brief nor the supplemental letter after argument carries any indication that a copy was sent to plaintiff.

For each and all of the foregoing reasons, the motion is denied without prejudice. Nothing in this ruling in any way modifies the discharge of bankrupt order entered in the U.S. District Court for the Southern District of Florida, or its legal effect.

judgment was entered to the date of discharge in bankruptcy, then the judgment is simply not a lien on any pre-discharge realty interest because there was none.

If a realty interest in Socher shows up after the bankruptcy discharge, and there were nothing in the chain of title to indicate ownership and transfer before judgment (which might implicate an inquiry into a possible fraudulent conveyance) then, if Socher has no personal obligation to pay the judgment, the discharge order would presumably resolve the lien issue. A filing under N.J.S.A. 46:16–4.1 in the County where the later acquired interest is located can provide the information to resolve the question without examining the proceedings in the Florida court.

Since the discharge order, of itself, affects only the personal obligation to pay and not the judgment creditor's property interest by lien, a "discharge and cancellation" could be misleading.

Records of the event of birth are inevitably followed by a record of death, but the death is no warrant for "cancelling" the record of birth. Records of marriages are similarly not "cancelled" by a later record of divorce or annulment. As with all record systems the history is preserved by the records.