Sergeant Donna M. HURLEY and Patrick K. Hurley, wife and husband, Plaintiffs,

v.

The ATLANTIC CITY POLICE DEPARTMENT, et al., Defendants.

Civil Action Nos. 93–260 (JEI), 94–1122 (JEI).

United States District Court, D. New Jersey.

Nov. 6, 1996.

Van Syoc Law Offices, Chartered by Benjamin Folkman, Cherry Hill, NJ, for Plaintiffs.

Tuohy & Tuohy by Michael J. Blee, Atlantic City, NJ, for Defendants Atlantic City Police Department and Nicholas V. Rifice.

Barry & McMoran, P.C. by Mark Falk (argued), Madeline Cox, Newark, NJ, for Defendant Henry Madamba.

## OPINION

IRENAS, District Judge.

This matter appears before the court on the defendants' motion to stay the execution of the judgment in this sexual harassment case and to waive the bond requirement pursuant to Fed.R.Civ.P. 62. The court will grant the motion of the Atlantic City Police

Department ("ACPD") because its status as a municipality entitles it to a stay without posting a bond under Fed.R.Civ.P. 62(f) and N.J.Ct.R. 2:9–6(b). Further, this court will grant Henry Madamba's ("Madamba") motion pursuant to Fed.R.Civ.P. 62(f) because he has shown good cause why he should not be required to post the bond.

## I. FACTS

Plaintiffs' sexual harassment case, brought pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 *et seq.*, against defendants ACPD and Madamba was tried before this court from November 27, 1995 to February 2, 1996. The jury found that the ACPD and Madamba discriminated against plaintiff on the basis of her sex. The jury awarded compensatory damages in the amount of $575,000 against Madamba and the ACPD. The jury also awarded punitive damages against the ACPD in the amount of $700,000.

By order and opinion dated July 12, 1996, this court granted defendants' motion for a remittitur of the compensatory damages award to $175,000. On August 19, 1996, the plaintiff accepted the remittitur. By orders and opinions dated July 12, 1996 and September 16, 1996, the court awarded counsel fees and costs in favor of plaintiffs in the amount of $516,046 and $70,135, respectively.

On September 18, 1996, this court entered an amended judgment. On September 27, 1996, and September 30, 1996, the ACPD and Madamba filed their Notices of Appeal, respectively. Thereafter, defendants filed the present motion for a stay of the execution of the judgment without requiring a supersedeas bond.

## II. DISCUSSION

Fed.R.Civ.P. 62(d) provides:

When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay . . . The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Both defendants, however, seek a stay of the judgment without giving the bond. The court holds that the ACPD does not have to post a bond pursuant to Fed.R.Civ.P. 62(f), which provides for a stay according to state law. Madamba also qualifies for a waiver under Rule 62(f) because he has shown good cause why he should not have to post a bond.

### A. Atlantic City Police Department

The ACPD is entitled to a waiver of the supersedeas bond requirement under Rule 62(f). The Rule provides:

In any state in which a judgment is a lien upon the property of the judgment debtor and in which the judgment debtor is entitled to a stay of execution, a judgment debtor is entitled, in the District Court held therein, to such a stay as would be accorded the judgment debtor had the action been maintained in the courts of that state.

Fed.R.Civ.P. 62(f). Thus, the federal rule mandates two requirements: (1) that under the applicable state law, the judgment results in a lien on the judgment debtor's property,[1] and (2) that state law provides for a stay. The court finds that both of these requirements are satisfied in New Jersey.

### 1. *Judgment Lien*

New Jersey law provides that a judgment of the Superior Court of New Jersey creates a lien against the judgment debtor's property from the time of the actual entry of such judgment on the minutes or records of the

---

**1.** Fed.R.Civ.P. 62(f)'s limitation that stays are only awarded if state law provides that a judgment creates a lien on the real property of the judgment debtor may now be somewhat superfluous. Prior to 1990, a judgment in federal court created a lien on property only to the extent that the state in which the district was located created such a lien. 28 U.S.C. § 1962. In 1990, however, Congress passed a statute which provides that a federal judgment automatically becomes a lien upon filing of an abstract. 28 U.S.C. § 3201. Presumably, Rule 62(f) was originally drafted to avoid granting stays in those states which would block enforcement of a judgment without a bond and without the judgment becoming a lien on property. Section 3201 eliminates this possibility and may render the first clause of Rule 62(f) redundant.

court. N.J.S.A. 2A:16–1; *see also Matter of Blease*, 605 F.2d 97, 98 (3d Cir.1979) ("The docketing of a judgment in the Superior Court of New Jersey creates a lien upon the judgment debtor's real estate from the date the judgment is docketed."); *In re Tash*, 80 B.R. 304 (Bankr.D.N.J.1987) (holding that a docketed judgment becomes a lien on the debtor's property before enforcement by a writ of execution); *Matter of Clifton*, 35 B.R. 785 (Bankr.D.N.J.1983) (holding levy on property unnecessary to create lien once judgment has been docketed). A judgment creates a lien against the judgment debtor's property pursuant to N.J.S.A. 2A:16–1 even when that debtor is a municipality. *Cf. Delaware Township v. Central–Penn Nat'l Bank of Philadelphia*, 79 F.2d 255 (3d Cir.1935) (holding that the Municipal Finance Act, N.J.S.A. 52:27–2, does not prohibit entry of judgment against a municipality, but merely prohibits enforcement of judgment where the municipality is unable to pay its debts and the Municipal Finance Commission has taken over the municipality's financial affairs). A judgment in a federal district court sitting in New Jersey is accorded the same status as a judgment in the New Jersey state courts. 28 U.S.C. § 1962; *Trend Mills v. Socher*, 4 B.R. 465 (D.N.J.1980).

### 2. *Stay*

New Jersey rules allow a stay of a judgment in a civil action adjudicating liability for a sum of money. N.J.Ct.R. 2:9–5(a). The rule requires the posting of a bond as a condition for receiving a stay. *Id.* However, the New Jersey rules also provide specific exemptions from the bond requirement:

> When an appeal is taken or certification sought by the State or any political subdivision thereof or any of their respective officers or agencies or by direction of any of the principal departments of the State and the operation or enforcement of a judgment or order is stayed, no bond, obligation or other security shall be required from the appellant.

N.J.Ct.R. 2:9–6(b). Under this rule, the ACPD, as a municipal police department, qualifies as one of the entities that is exempt from posting a bond to obtain the stay. *Wal-dorf v. Shuta*, CIV.A. No. 84–3885, 1992 WL 333304, at *8 (D.N.J. Nov. 10, 1992) ("In accordance with New Jersey law, the Borough [of Kenilworth] will not be required to post a bond.") (relying on N.J.Ct.R. 2:9–6 for the proposition that municipalities are exempt from the bond requirement), *vacated on other grounds*, 3 F.3d 705 (3d Cir.1993); *Hild v. Bruner*, 496 F.Supp. 93, 100 (D.N.J. 1980) (finding that it was not necessary for town, township, or police officers to post bond to obtain a stay pursuant to Fed. R.Civ.P. 62(f) and N.J.Ct.R. 2:9–6). Thus, under the federal rules, ACPD must be allowed to obtain a stay under the same conditions as provided for by state law: one which does not require the posting of a bond. Accordingly, this court will grant defendant ACPD's motion to stay the execution of judgment and exempt ACPD from posting a supersedeas bond.

### B. Henry Madamba

Madamba advances two arguments to support his position that the court should grant him a stay without requiring a bond. First, he argues that he is an "officer" of Atlantic City and is entitled to a stay pursuant to Fed.R.Civ.P. 62(f) and N.J.Ct.R. 2:9–6. As an alternative, he urges the court to grant a discretionary stay pursuant to its authority under Fed.R.Civ.P. 62(d), because Atlantic City has "agreed" to indemnify him for the entire amount of the jury verdict and because he would be forced into bankruptcy if he had to satisfy the judgment himself.

### 1. *Stay For Municipal Officers*

Madamba argues that he is entitled to a stay pursuant to state law under Rule 62(f) and N.J.Ct.R. 2:9–6. Rule 2:9–6 provides that "when an appeal is taken by the State or any political subdivision thereof or any of their *respective officers*, agencies or by direction of any of the principal departments of the State ... no bond ... shall be required." Madamba claims that he is entitled to a stay without a bond because he is an "officer" within the meaning of Rule 2:9–6. The use of the word "officer" in this rule is ambiguous and subject to several interpretations. Plaintiff suggests that the word "officer" is more restrictive than the language used by

the statutes governing indemnification and that the drafters deliberately avoided expanding its coverage to "employees" or "officials." *Compare* N.J.Ct.R. 2:9–6(b), *with* N.J.S.A. 59:10–4 ("local public *employees*") (emphasis added), *and* § 40A:14–155 ("*member* or officer of a municipal police department") (emphasis added), *and* Atlantic City, N.J. § 16–2 ("*official*, officer, *or employee*") (emphasis added).

The use of the word "officer" could be read as restricting indemnification to those of a high rank such as the mayor, a department head, or the chief of police. If that were the case, a police captain may not rank high enough to meet this standard. Alternatively, the rule might cover only those individuals sued in their official capacity, where there is no allegation of individual wrongdoing and the judgment will be paid out of the government treasury. This interpretation would exclude Madamba because the judgment involves his personal liability for his own actions.

Caselaw does not shed light on the meaning of "officer." The court is unaware of a New Jersey case in which the bond requirement was waived for an officer acting in his individual capacity.[2] Because the interpretation of Rule 2:9–6 is uncertain, the court is reluctant to rest its determination on a reading of the "officers" language alone.

### 2. *Discretionary Stay*

#### a. Generally

At first glance, the language of Fed. R.Civ.P. 62(d) implies that giving a bond is necessary step in order obtaining a stay. Although the Third Circuit has not ruled on the issue of whether the district judge can act within his own discretion to grant a stay without a bond or with a modified bond, the predominant and more persuasive view is that Rule 62(d) permits this discretion. *See Schreiber v. Kellogg*, 839 F.Supp. 1157, 1159 (E.D.Pa.1993). Courts of appeal in several

other circuits, and lower courts in this circuit, have adopted this discretionary view of Rule 62(d). *See, e.g., Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1559–60 (10th Cir.1996); *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 796–97 (9th Cir.1989); *Poplar Grove Planting and Refining Co. Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir.1979); *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir.1988); *Texaco, Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1154 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Federal Prescription Serv., Inc. v. American Pharm. Assoc.*, 636 F.2d 755, 758 (D.C.Cir.1980); *Schreiber*, 839 F.Supp. at 1159; *United States v. Aspar Constr. Co.*, Nos. CIV.A. 85–0459, 85–0939, 85–1936, 85–3873, 85–5370, 85–0600, 1988 WL 24149, at *1–*2 (D.N.J. March 16, 1988), *aff'd* 853 F.2d 923 (3d Cir. 1988); *United States v. Kurtz*, 528 F.Supp. 1113, 1115 (E.D.Pa.1981), *aff'd*, 688 F.2d 827 (3d Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *C. Albert Sauter Co. v. Richard S. Sauter Co.*, 368 F.Supp. 501, 520 (E.D.Pa.1973).

Several factors can be used to determine whether the bond should be waived. The court may examine: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place the other creditors of the defendant in an insecure position. *Dillon*, 866 F.2d at 904–05.

New Jersey law, incorporated through Fed.R.Civ.P. 62(f), also envisions judicial discretion in granting stays from enforcement of a judgment without posting a bond. N.J.Ct.R. 2:9–6(a) ("*Unless the court*

---

**2.** In *Hild v. Bruner*, the court, without discussion, awarded a stay and waived the bond requirement for the town, township and police officers. *See Hild*, 496 F.Supp. 93, 100 (D.N.J.1980). Although there was no discussion of the official versus individual capacity issue, the facts of *Hild*

suggest that the officers were sued for conduct that occurred while they were responding to a radio call and attempting an arrest, activities that clearly fell within their official duties. *See id.*

*otherwise orders after good cause shown,* the bond shall be conditioned for satisfaction of the judgment in full") (emphasis supplied); 2:9–5(a) ("A judgment or order in a civil action adjudicating liability for a sum of money . . . which is the subject of an appeal . . . shall be stayed only upon the posting of a bond . . . *unless the court otherwise orders on good cause shown.*") (emphasis supplied). The court has broad discretion to determine whether good cause exists on a case-by-case basis. *See Rosato v. Penton,* 182 N.J.Super. 493, 495, 442 A.2d 656, 657 (Law Div.1981) (" 'It is impossible to lay down a universal definition of good cause . . . or an all-inclusive and definitive catalogue of all of the circumstances to be considered by a court in determining whether there is good cause. Each case must be decided on its own facts . . . considerations of practical convenience should play the leading role in determining what constitutes good cause.' " (quoting *Ullmann v. Hartford Fire Ins. Co.,* 87 N.J.Super. 409, 209 A.2d 651 (App.Div.1965) (citations omitted))).

### b. Indemnification

Madamba argues that because the Atlantic City Solicitor's office has "agreed" to indemnify him for the entire amount of the jury verdict, this court should have confidence in the availability of funds to pay the judgment

3. N.J.S.A. 40A:14–155 provides in relevant part:
   Whenever a member or officer of a municipal police department is a defendant in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the *furtherance of his official duties,* the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding.

4. Atlantic City Code § 16–2 provides:
   Whenever an official, officer or employee of the City of Atlantic City is a defendant in any civil action or legal proceeding arising out of or incidental to the performance of his or her duties, the City of Atlantic City shall provide the official, officer or employee with the necessary defense or, at the city's option, a means for defense of such action or proceeding, and shall hold such official, officer or employee harmless and indemnify him or her from the payment of any settlement resulting from the proceeding except in the following situations:
   A. Where the action has been brought by the municipality itself against said official, officer

and not require a bond. *See* Letter from Dennis M. Touhy to Judge Irenas of 10/18/96; N.J.S.A. 59:10–4 (giving local public entities the *option* of indemnifying its employees). However, because there are many problems with the propriety of indemnifying Madamba, we cannot rely solely on the letter promising indemnification as sufficient to constitute an "agreement" that is binding and lawful. Thus, at this stage, the possibility of indemnification is not enough by itself to support a stay without a bond. Madamba suggests that indemnification is mandated by N.J.S.A. 40A:14–155 [3] and Atlantic City Code § 16–2.[4]

### (1) Statutory Authority for Municipal Ordinance

For the Atlantic City ordinance § 16–2 to be operative, there must be statutory authority to support its application. The possible candidates for statutory authority are N.J.S.A. 40A:14–155 and N.J.S.A. 59:10–4. Neither will suffice.

N.J.S.A. 40A:14–155 only provides for payment of attorney's fees and costs, not for indemnification for an adverse judgment. Moreover, legislative history does not support its application to any conduct outside the scope of official police duties, such as acts of sexual harassment.[5] *See* S. 1684 (N.J.

or employee.
B. Where the official, officer or employee has been specifically found by the Court in the proceedings to have acted with actual fraud, actual malice, or willful misconduct.
C. Where the official, officer, or employee is found to have acted in violation of the city's Code of Ethics.
Atlantic City, N.J. § 16–2.

5. The legislative history of 40A:14–155, and its accompanying caselaw, take a very narrow view of the activities covered by the statute. A Statement of the New Jersey Senate County and Municipal Government Committee explains:

   A number of decisions by the courts of this State have expanded the obligation imposed by the literal terms of this section to reach, not only charges of improper performance of police duties, but also charges arising from acts outside the scope of police duties, but occurring in the course of the performance of those duties, and charges arising solely from the person's status as a police officer. The bill would eliminate the coverage of the section for

1985); *see, e.g., Sparkman v. City of Atlantic City,* 237 N.J.Super. 623, 629, 568 A.2d 917, 919 (App.Div.1990) ("[I]t is perfectly plain that a police officer is entitled to counsel or reimbursement only where he is charged with an infraction arising from the lawful exercise of police powers in the furtherance of his official duties."), *cert. denied,* 121 N.J. 660, 583 A.2d 346 (1990). Moreover, the policy objective underlying N.J.S.A. 40A:14–155 was to eliminate any concern that police officers might be discouraged from effectively pursuing their duties if they were forced to provide their own defense against civil actions and criminal charges. *Van Horn v. Trenton,* 80 N.J. 528, 536, 404 A.2d 615 (1979). To the extent that Madamba's conduct might later be deemed outside the scope of his employment, the public policy behind 40A:14–155 is less compellingly implicated.

N.J.S.A. 59:10–4 is an alternate source of authority, but because it is part of the Tort Claims Act ("TCA") it might be limited to claims which are brought under that law. The claims against Madamba do not fall within the TCA. Madamba was found liable under Title VII and the NJLAD. Title VII is a federal claim that is not covered by the state TCA. NJLAD claims also fall outside the TCA. Under NJLAD, a claimant can recover punitive damages against a municipality. Such damages are not available under the TCA. *See Gares v. Willingboro Township,* 90 F.3d 720, 728 (3d Cir.1996) (noting that NJLAD provides relief from conduct more akin to the malicious or willful acts exempted from the TCA than the negligently inflicted injuries covered thereby); *Abbamont v. Piscataway Township Bd. of Educ.,* 138 N.J. 405, 425–26, 430–31, 650 A.2d 958, 968, 970–71 (1994) (allowing recovery of punitive damages against public entity under the Conscientious Employee Protection Act, which is governed by the same standards of liability as the NJLAD, and noting that the TCA was not meant to cover discrimination claims and does not allow punitive damages).

Even if N.J.S.A. 59:10–4 were applicable to a non-TCA judgment, its terms do not auto-matically *require* indemnification. First, the language of 59:10–4 itself is permissive, not mandatory. *See* N.J.S.A. 59:10–4 ("Local public entities are hereby empowered to indemnify local public employees."). Second, the statute appears to require an "opinion by the governing body," which has not been formally rendered here. Third, the governing body's opinion must reflect a determination that the acts committed by the employee do not constitute "actual fraud, actual malice, willful misconduct or an intentional wrong." It is possible that at least some of Madamba's conduct could be found to fall into those prohibited categories. *See Gares,* 90 F.3d at 728; *infra* Part II.B.2.b.(2) (discussing the actual malice issue under Atlantic City ordinance § 16–2(B)).

### (2) *Applicability of Municipal Ordinance*

Even if there were statutory authority for the Atlantic City ordinance, it is not clear that its terms would allow indemnity for Madamba. The ordinance states that the City "shall provide" an officer of Atlantic City, who is a defendant in a civil action "arising out of or incidental to the performance of his or her duties," with a defense, and "shall hold" such officer "harmless and indemnify him or her from the payment of any settlement or judgment." Atlantic City, N.J.Code § 16–2. Thus, the first question that should arise is whether the conduct for which Madamba was found liable arose out of or was incidental to the performance of his duties, an issue on which there may be some dispute. Even it were determined that this lawsuit arose out of Madamba's official duties, there are exceptions to and limitations on § 16–2's operation that may bar indemnity.

Section 16–2 provides that indemnity is inappropriate if the official, officer, or employee is found "by the Court" to have acted with "actual fraud, actual malice or willful misconduct." Atlantic City, N.J. § 16–2(B). This was a jury trial. Thus, in order for the exception to apply, we must determine

---

charges arising from acts outside the scope of police duties, but occurring in the course of the performance of those duties, and for "status charges."

S. 1684, (N.J.1985).

whether the jury found actual malice on the part of Madamba. Here, Madamba incorrectly relies on the assumption that because the jury did not award punitive damages against Madamba, the court must conclude that it also made a finding of no actual malice. A finding of no actual malice cannot necessarily be inferred from the absence of a punitive damages award. The jury was specifically instructed that: "An award of punitive damages is discretionary. In other words, if you find that the legal requirements of punitive damages are met, you may award punitive damages, or you may elect not to award punitive damages." Jury Charge § 23. Moreover, this court concluded in an earlier opinion that because of this instruction, "[i]t was well within the province of the jury to elect not to award punitive damages against Madamba even if the jury believed that Madamba's conduct *was so malicious and wanton* as to qualify for punitive damages." *Hurley v. Atlantic City Police Dep't,* 933 F.Supp. 396, 422–23 (D.N.J.1996) (emphasis added). At this point the court expresses no opinion on this issue.

Atlantic City Code § 16–4 provides several limitations on the obligations of the city under § 16–2. Section 16–4 states that: "[t]he providing of a defense and indemnification . . . shall be refused by the municipality *if it is the determination of the City Council* that . . . the act or omission was not within the scope of the person's employment or official duties." (emphasis supplied). Thus, not only is there yet another reference to the requirement that the conduct for which the officer seeks indemnification must have occurred within his official duties but also there is an added requirement of a formal determination by the City Council as to that occurrence. There has been no formal determination by the City Council as to whether Madamba acted within the scope of his employment.

Section 16–4 reiterates that indemnification may be refused if the act involved actual fraud, willful misconduct or actual malice or intentional wrongdoing, thus raising the same questions discussed above. Finally, § 16–4 provides that indemnification shall be refused if it is inappropriate under N.J.S.A. 59:10–1 (TCA), which it very well may be if the "governing body" were to determine that Madamba's conduct was malicious.

In sum, the letter from defense counsel stating that the City Solicitor has agreed to indemnify Madamba may be insufficient to guarantee that indemnification is legal under either New Jersey statutes or the Atlantic City Code. Thus, this promise of indemnification cannot, standing alone, support Madamba's motion for a discretionary stay pursuant to Rule 62(d).

#### c. Financial Condition

Madamba claims that requiring him to obtain a supersedeas bond would force him into bankruptcy. Of all of the relevant factors to consider under Rule 62(d), the factor that is most commonly used to waive the bond requirement is the financial hardship that the bond may impose on the appellant.[6] *Townsend,* 881 F.2d at 796. Usually, however, if the bond is waived or modified, the court was able to identify an alternative arrangement to secure the debt. *See generally Poplar Grove,* 600 F.2d at 1191; *see also Miami Int'l Realty Co. v. Paynter,* 807 F.2d 871, 874 (10th Cir.1986) (reducing the amount of the bond and requiring that appellant's insurance money be placed in escrow to guarantee the modified amount); *Sauter,* 368 F.Supp. at 520–21 (reducing bond amount, ordering certain cash and securities to be placed in escrow, and restricting payment of debts from certain funds); *Townsend,* 881 F.2d at 797 (recognizing that because the appellant was himself an officer of the court subject to stiff sanctions, the bond was an unnecessary insurance policy).

The mere prospective inability to pay a judgment is insufficient for a stay without a bond unless the judgment debtor has "objectively demonstrated his ability to satisfy the judgment and maintain the same degree of

---

**6.** *Dillon v. City of Chicago,* 866 F.2d 902 (7th Cir.1988), which originally listed the relevant factors, stated that insolvency was relevant if it would place other secured creditors in jeopardy. Madamba has not alleged the existence of any

other creditors. Nevertheless, courts adopting the *Dillon* factors have since chosen to take the financial situation of the judgment debtor into consideration above and beyond the fate of other creditors.

solvency through the appellate process." *See Avirgan*, 125 F.R.D. at 187 (quoting 7 James Wm. Moore et al., Moore's Federal Practice, § 62.06, at 62–34 (2d ed. 1987)); *see also Federal Prescription Serv.*, 636 F.2d at 761 (allowing a waiver where the judgment debtor's net worth was 47 times the amount of the judgment, and the debtor's ability to pay was unquestioned). No such showing has been made here. Madamba has neither proposed an alternative means of security nor has he offered a reduced amount payable from a stable source of funds. Indeed, Madamba has offered no details of any kind concerning his assets, income or liabilities. Yet the simple fact remains that Madamba is a police officer, and nothing in the record suggests that he could satisfy a judgment which, as to him, exceeds three quarters of a million dollars.

Madamba's bankruptcy argument by itself might not convince this court to waive or modify the bond requirement. *See Avirgan v. Hull*, 125 F.R.D. 185, 187 (S.D.Fla.1989) (denying waiver based on precarious financial position alone), *aff'd*, 932 F.2d 1572 (11th Cir.1991), *cert. denied*, 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992); *Kurtz*, 528 F.Supp. at 1115 (noting that an unsupported allegation that the appellant is financially unable to post a bond, without any proposal of an alternate arrangement, is insufficient to trigger a discretionary waiver); *Schreiber*, 839 F.Supp. at 1161 (denying request to waive bond even where value of assets exceeded the judgment because appellant failed to show satisfy his burden to show significant hardship). However, the strong likelihood that enforcement of this judgment would push him into bankruptcy is a factor which informs the court's discretion.

### d. Good Cause

In the case at bar, the court is satisfied that Madamba has shown good cause why a stay of execution of judgment should be granted without a bond. First, the judgment against Atlantic City provides some protection for the plaintiff that the judgment will be satisfied.[7] Second, there remains the possibility that Atlantic City will indemnify Madamba given the current promise to do so, despite this court's finding that the current "promise" to indemnify may not, as it now stands, be legally binding. Third, although the meaning of "officers" in the New Jersey rule is uncertain, it does not exclude Madamba on its face. Fourth, Madamba has submitted to the court that he would face bankruptcy if execution is allowed. Although bankruptcy itself would not be enough to support a bond waiver, it is relevant as one factor in the good cause showing. *See supra* Part II.B.2.c. Finally, we do not want to undermine Madamba's efforts in appealing this judgment as we recognize the importance of appellate review in a case where the award of damages and counsel fees exceeds $1,500,000. Therefore, this court will grant a stay without a bond pursuant to Rule 62(f).

The court's award of a stay without a bond carry two conditions. First, during the pendency of this appeal Madamba may not make any gifts or transfer any real or personal property without adequate consideration. In addition, the plaintiffs shall have the right pursuant to N.J.Ct.R. 4:59–1(e), notwithstanding the stay, to conduct supplementary proceedings concerning Madamba's assets and income. These conditions will serve both to protect the plaintiff against dissipation of assets and also to uncover the extent of those assets so as to permit a further application should the court's conclusions about Madamba's financial condition be erroneous.

### III. CONCLUSION

For the above reasons, the court will grant the ACPD's and Madamba's motion for a stay of execution of the judgment and will waive the bond requirement pursuant to Fed. R.Civ.P. 62(f). The waiver of Madamba's bond is contingent upon his refraining from any gifts or transfers of real or personal property without adequate consideration during the pendency of the appeal and upon his cooperation with any supplementary proceedings conducted by plaintiff pursuant to

---

**7.** The court notes that the protection afforded to the plaintiff by the judgment against Atlantic City is less than absolute because the possibility exists that an appellate court would affirm against Madamba and reverse against the City.

N.J.Ct.R. 4:59–1(e). An appropriate order will issue.